UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIN MURAJ,

                              Plaintiff,                  No. 04-CV-6563 CJS

-vs-

                                                 DECISION AND ORDER

UPS FREIGHT SERVICES, UNITED PARCEL
SERVICE, INC., MARY GIBSON, CONSTANCE
CAHILL and LEONARD SHARP,

                              Defendants.

_____


APPEARANCES

| | |
|---|---|
| For plaintiff: | Michael Cobbs, Esq.<br>Brown & Hutchinson<br>925 Crossroads Building<br>Rochester, New York 14614 |
| For defendants: | Allan S. Bloom, Esq.<br>Stacey A. Bentley, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>75 East 55th Street<br>New York, New York 10022 |


INTRODUCTION

This is an action alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.*, and New York Civil

1

Rights Law § 40-c. Now before the Court is defendants' motion [#58] asking the Court to reconsider its decision to deny a portion of defendant's summary judgment motion. For the reasons that follow, defendant's application is denied.

## BACKGROUND

The facts of this case were set forth in detail in the Court's previous Decision and Order [#57]. For purposes of this motion, it is sufficient to note the following. Plaintiff was employed by defendant UPS Freight Service ("UPS Freight"), where her immediate supervisor was defendant Mary Gibson ("Gibson"). Plaintiff worked in UPS Freight's Ocean Export Department, where one of her job duties was to process documents known as Shippers Export Declarations ("SEDs"), which were submitted by customers who had contracted with UPS Freight to ship goods. In that regard, plaintiff was required, prior to the shipment date, to take information from the SEDs and enter it into a computer that was linked to a computer at the United States Customs Service.

According to plaintiff, on July 30, 2002, she went to Gibson and told her that she was late in filing two separate SEDs. With regard to one of the late filings, plaintiff told Gibson that the original SED submitted by the customer contained an error, and that she had contacted the customer and asked it to submit a new SED with the correct information. Notably, the allegedly erroneous SED had been received from the customer by fax, and therefore would have borne the date that it was sent as part of the fax "header." Plaintiff states that while she was speaking by telephone with the customer, to request that a corrected SED be sent, she absentmindedly "doodled" on the SED with "White Out" correction fluid, coincidentally deleting only the portion of the fax header containing the date that the fax had been sent to UPS Freight. Plaintiff

states that it was unnecessary for her to keep the SED upon which she had doodled, since the client was going to send a new one, and that she therefore threw the document, upon which she had doodled with the correction fluid, into the trash. Significantly, she denies making any photocopies of the altered SED before throwing it away.

Later that day, plaintiff's employment was terminated, purportedly because she had falsified a shipping document.  Specifically, plaintiff was accused of making a photocopy of the aforementioned "whited out" SED, with the fax header deleted, and placing it in the shipping file, presumably in order to cover up the date that the SED had been received, and the fact that she had not processed it in a timely manner.  In that regard, Gibson stated that she examined the subject shipping file, and observed that while all of the other documents sent by the client contained the date as part of the fax header, the date was missing from the SED.  Gibson brought the matter to the attention of UPS Freight's Human Resources manager, Constance Cahill ("Cahill"), and suggested to her that she should search the trash cans near plaintiff's desk and the photocopier. (Gibson Dep. 261-62)  Cahill subsequently searched plaintiff's work area and found the "whited out" SED in plaintiff's recycle bin.  After discussing the matter further with Gibson, Cahill concluded that plaintiff had falsified the document in the file in order to cover up her negligence in failing to process the SED in a timely manner.

In this action, plaintiff contends that Gibson sexually harassed her "almost on a daily basis" throughout her employment.  Moreover, plaintiff alleges that Gibson retaliated against her after plaintiff complained about the harassment and threatened to report her.  Plaintiff contends that Gibson initially retaliated against her by being overly

critical of her work. However, plaintiff maintains that Gibson also retaliated against her by causing her employment to be unfairly terminated. In her affidavit in opposition to defendants' summary judgment motion, plaintiff stated, in relevant part:

> I know that I did not put a copy of a SED in the file in question because I was waiting on a new SED from the customer. I put the old SED, to which I [had] applied white-out, in my garbage. I do not understand where the SED [that] Gibson allegedly found in the file came from. *I believe Gibson made the copy from the original found by Cahill in my garbage and then placed the copy in the file and represented to Cahill that I had put it in the file to get me fired.* I did not make the copy, and certainly did not put it in the file.

(Pl. Aff. [#29] ¶ ¶ 81-85) (emphasis added).

The Court denied the motion for summary judgment on plaintiff's retaliation claims as to both UPS Freight and Gibson, finding that triable issues of fact existed. As to Gibson, the Court stated:

> Viewing the evidence in the light most favorable to plaintiff, she has come forward with evidence that she complained to Gibson about harassment, and that one month later, Gibson falsely accused her of violating company policy, which led directly to the termination of her employment. Clearly, there are issues of fact as to whether or not Gibson retaliatorily "framed" plaintiff by placing the doctored SED in the shipping file.

Decision and Order [#57] at 19. Moreover, as to UPS Freight, the Court ruled that, if Gibson were found to have caused the termination of plaintiff's employment, then UPS Freight could be held vicariously liable, since employers may be held vicariously liable for adverse employment actions taken by supervisors. *See*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257, 2269 (1998) ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer.")

ANALYSIS

Defendants have brought the subject motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  A Rule 59(e) motion

> will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters in other words, that might reasonably be expected to alter the conclusion reached by the court. Such a motion cannot assert new arguments or claims which were not before this court on the original motion.

*Patterson v. U.S.*, No. 04 Civ. 3170(WHP), 2006 WL 2067036 at *1 (S.D.N.Y. Jul. 26, 2006) (*citing Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995), other citations and internal quotation marks omitted).  A decision by a district court to deny a motion under Rule 59(e) is reviewed on appeal for abuse of discretion. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

Turning to the instant motion, the Court finds that the application must be denied. At the outset, it is clear, from the facts set forth above, that plaintiff's theory in this case is that Gibson caused plaintiff's employment to be terminated by falsely accusing her of doctoring the shipping document and placing it in the file.  In other words, plaintiff's theory is that Gibson "framed" her, in retaliation for plaintiff threatening to report Gibson's harassment.  Despite this, defendants inexplicably state, in their moving papers, the following: "Significantly, Plaintiff <u>never</u> advanced the argument that it was Gibson – and not Plaintiff herself – who placed the doctored SED in the shipping file. Nor is there <u>any</u> record evidence to support the proposition that Gibson 'framed' Plaintiff in this manner." (Def. Memo of Law [#58] at 3) (emphasis in original).  As already demonstrated, defendants' argument is incorrect, since plaintiff expressly advanced that

very argument. Moreover, defendants are reminded that, in ruling upon a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party, "drawing all reasonable inferences in favor of the party against whom summary judgment is sought." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Here, plaintiff expressly states, in a sworn statement, that she did not make a photocopy of the whited-out document or place such a copy in the shipping file. On the other hand, Gibson swears that she found such a photocopy in the shipping file, which discovery indisputably led directly to the termination of plaintiff's employment.[1] It is also undisputed that Gibson suggested to Cahill that she search plaintiff's work area for incriminating evidence, which Cahill found in the exact place that Gibson suggested. Viewing this evidence, as well as the entire record, in the light most favorable to plaintiff[2], it is certainly reasonable to infer that, if plaintiff did not put the document in the file, then Gibson made up the whole story. Consequently, the Court rejects defendants' suggestion that it denied summary judgment based upon a theory not raised by plaintiff.

The Court also disagrees with defendants concerning UPS Freight's potential vicarious liability on the retaliation claim. Defendants concede that an employer will be

---

[1] Clearly, either plaintiff or Gibson is lying. While the Court may have an opinion on this point, the Court's view is not relevant at this time, since it will be for the jury to resolve issues of credibility. However, the parties are advised to carefully consider their positions in this case, since, if after trial the Court believes that a party has perjured herself, it will not hesitate to refer the matter to the United States Attorney.

[2] Undoubtedly, plaintiff's version of the facts may seem implausible. For example, why, when doodling on the document, did plaintiff only delete the fax header? How would Gibson have known that plaintiff had doodled on the document with correction fluid before throwing it away? Even assuming that Gibson had seen plaintiff doodle on an SED, what are the chances that the SED in question would have pertained to a file which plaintiff was late in processing? And how could Gibson have hatched such a devious plot in such a short amount of time, and have been able to retrieve the altered document from plaintiff's trash, photocopy it, and return it, without being seen? However, these questions are not for the Court to resolve on a summary judgment motion.

held vicariously liable for adverse employment actions taken by a supervisor where the plaintiff is alleging "sexual harassment." (Def. Memo [#58] at 6). Defendants deny, though, that this principle applies to claims of retaliation. Unfortunately, they provide no legal authority for their argument. On the other hand, as the Court discussed in its previous Decision and Order, it appears that, under general principles of vicarious liability under Title VII, an employer may be held vicariously liable for tangible employment actions taken by its supervisors. Moreover, courts have held employers vicariously liable for retaliation committed by supervisors. *See*, CHARLES R. RICHEY, 1 MANUAL ON EMPLOYMENT DISCRIMINATION § 1:31 (June 2006) ("[T]he Eighth Circuit has adopted vicarious liability for Title VII retaliation claims and has held that where a supervisory employee with the power to hire, fire, demote, transfer, suspend, or investigate an employee is shown to have used that authority to retaliate for the filing of a sexual harassment charge, the plaintiff need not also prove that the employer participated in, knew, or should have known, of the retaliatory conduct to hold the employer liable.") (*citing Cross v. Cleaver*, 142 F.3d 1059, 1070-74 (8th Cir. 1998)); *see also, Coffey v. Dobbs Intern. Services, Inc.*, 5 F.Supp.2d 79, 83 (N.D.N.Y. 1998) ("Though the Second Circuit has not addressed the issue, this Court finds the Eighth Circuit's rationale in *Cross* persuasive *on the present facts*, and finds that, as a matter of law, Russo's retaliatory actions were those of his employer.") (emphasis added), *rev'd on other grounds*, 170 F.3d 323 (2d Cir. 1999); 45A AM. JUR. 2D JOB DISCRIMINATION § 283, n. 2 ("A retaliator may be so high in the employer's hierarchy that, employing common-law agency principles, retaliatory conduct under Title VII would necessarily be

imputed to the employer.") (*citing Cross v. Cleaver*, 142 F.3d 1059 (8th Cir. 1998)).

## CONCLUSION

Defendant's motion for reconsideration [#58] is denied.  Counsel are hereby directed to contact the undersigned's chambers within ten days of the date of this Decision and Order to schedule a Pretrial Conference.

SO ORDERED.

Dated: Rochester, New York
     August 31, 2006

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge